James E. Magleby (7247)
  magleby@mcgiplaw.com
Jennifer Fraser Parrish (11207)
  parrish@mcgiplaw.com
**MAGLEBY CATAXINOS & GREENWOOD**
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101
Telephone: (801) 359-9000
Facsimile: (801) 359-9011

Attorneys for Plaintiff ClearOne, Inc.

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CLEARONE, INC., a Utah corporation;** | **COMPLAINT** |
|     **Plaintiff,** | **AND** |
| **v.** | **DEMAND FOR JURY TRIAL** |
| **DIALCOM NETWORKS, S.L., a Spanish private limited company; JOSE ENRIQUE DOMINGUEZ GARCIA, an individual; and MARCELINO IGNACIO MARTINEZ MARTIN-BALLESTRO, an individual,** | |
| | **Case No.  2:16-cv-971-PMW** |
|     **Defendants.** | **Magistrate Paul M. Warner** |

Plaintiff ClearOne, Inc. ("Plaintiff" or "ClearOne"), through counsel MAGLEBY

CATAXINOS & GREENWOOD, hereby complains of Dialcom Networks, S.L. ("Dialcom"),

Jose Enrique Dominguez Garcia ("Garcia"), and Marcelino Ignacio Martinez Martin-

Ballestro ("Martin-Ballestro") (collectively, "Defendants") as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      ClearOne is a Utah corporation, with its principal place of business in Salt Lake County, Utah.

2.      Dialcom is a Spanish private limited company, at all relevant times conducting business in Salt Lake County, Utah, and Zaragoza, Spain.

3.      Garcia is an individual residing in Spain, at all relevant times conducting business in Salt Lake County, Utah, and Zaragoza, Spain.

4.      Martin-Ballestro is an individual residing in Spain, at all relevant times conducting business in Salt Lake County, Utah, and Zaragoza, Spain.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because ClearOne and Defendants are citizens of a State and citizens or subjects of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs

6.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 & 1367 because this action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* ("Copyright Act"), and all other claims are so related that they form part of the same case or controversy.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to ClearOne's claims occurred in the district.

8.      Jurisdiction is proper in this Court pursuant to UTAH CODE § 78B-3-205, including because Defendants transact and have transacted business in Utah, contract

and have contracted to supply services or goods in Utah, and are causing and have caused injury in Utah.

## GENERAL ALLEGATIONS

### ClearOne and Dialcom

9.    ClearOne is a publicly traded company that designs, develops, and sells conferencing, collaboration, streaming, and digital & signage solutions, worldwide, for audio and visual communications.

10.    Dialcom is a developer of computer applications, and Garcia and Martin-Ballestro are its principals, owning approximately 40% of the company.

### The Negotiations for Spontania

11.    Prior to September 7, 2013, Garcia reached out to ClearOne regarding the potential purchase by ClearOne of Dialcom and/or its business, related technology, and intellectual property.

12.    On September 7, 2013, Garcia travelled to Salt Lake City, Utah, for the express purpose of an in-person meeting with ClearOne regarding a potential transaction between ClearOne and Dialcom.

13.    Prior to the meeting in Salt Lake City, Garcia executed a non-disclosure agreement on behalf of Dialcom, expressly governed by the laws of the State of Utah, and agreeing that jurisdiction for any dispute under the agreement would lie exclusively with the Utah courts.

14.     On November 5, 2013, Garcia executed a Summary of Transaction Terms with respect to the proposed acquisition of Spontania on behalf of Dialcom, agreeing to a Utah choice of law provision.

15.     Over the course of the negotiations, both Garcia and Martin-Ballestro engaged in significant additional contacts within the State of Utah, including delivery and receipt of numerous e-mails, regular telephone calls, and video conferences with ClearOne executives and personnel in Salt Lake City, Utah.

### The Framework Agreement, False Representations, and Material Omissions

16.     Dialcom entered into negotiations with ClearOne to sell certain assets and technology.  In the course of those negotiations, Dialcom identified, in general terms, two product lines, "Spontania" and "Orion/Brandtalk" ("Orion").

17.     The Spontania line of products were represented by Dialcom to encompass a commercial-grade set of audio and video products for purchase and use by enterprise customers.

18.     The Orion line of products were represented by Dialcom to consist of a consumer product, distinct and different from the Spontania commercial product.

19.     In other words, Defendants represented to ClearOne that there were two distinct and different product lines, Spontania and Orion.

20.     ClearOne expressed interest in purchasing only the Spontania product line and related assets.

21.     Defendants specifically represented to ClearOne during in-person discussions in Salt Lake City, Utah, and telephone and video communications, that the

Spontania intellectual property, and in particular the Spontania source code, was unique and separate from the Orion intellectual property, including representations that the Orion product did not share any of the same source code as Spontania and was independently developed from Spontania (the "Source Code Representations").

22.     However, Defendants refused to allow ClearOne to verify the accuracy of the Source Code Representations during the due diligence process, claiming that because the Orion source code was unique and had been separately developed from the Spontania source code, the Orion source code was confidential and trade secret.

23.     Based upon the Source Code Representations, ClearOne agreed to purchase the Spontania product line and related assets.

24.     The Spontania acquisition was consummated, among other things, through the execution of a contract signed by both parties on or about December 20, 2013, titled the "Framework Agreement."

25.     Under the Framework Agreement, ClearOne acquired the Spontania product line, by purchasing all assets related to the Spontania line of products, including certain intellectual property that included the Spontania source code, the Spontania product line, and the related services business (the "Spontania Assets"), for an amount in excess of $5 million US dollars.

26.     The Framework Agreement, and other contracts related to the Spontania acquisition, were to be substantially performed in Salt Lake City, among other places.

27.     Because of the Source Code Representations, and because of Defendants' refusal to answer questions about the details of the Orion source code

(claiming trade secret protection) or otherwise provide information by which ClearOne could test and verify the accuracy of the Source Code Representations, ClearOne <u>required</u> that the Source Code Representations become specific representations and warranties in the Framework Agreement.

28.     Defendants agreed to include the Source Code Representations in the Framework Agreement.

29.     Accordingly, in the Framework Agreement, Defendants confirmed their prior representations, by repeating the Source Code Representations, making express representations and warranties that the Spontania source code was unique and separate from the Orion intellectual property, including that the Orion product did not share any of the same source code as Spontania and was independently developed.

30.     Specifically, in Section 3.11 of the Framework Agreement, Defendants expressly represented and warranted to ClearOne:

> … The Spontania Software does not include any Intellectual Property that is part of or included in any other software or product of Seller, including any such Intellectual Property in the Orion/Brandtalk Business. …
>
> …  <u>No Source Code for any Software retained in the Orion/Brandtalk Business is included in any Source Code for the Spontania Software</u>.

Framework Agreement, § 3.11 (emphasis added).

31.     In reliance upon the Source Code Representations, ClearOne executed the Framework Agreement

32.     The Source Code Representations were and are an essential part of the parties' agreements, and material to the acquisition transaction, including because a

critical aspect of the transaction was that ClearOne would acquire unique and exclusive intellectual property rights in Spontania.

33.     In fact, the Source Code Representations are expressly identified in the Framework Agreement as "Fundamental Representations."  *See* Framework Agreement, § 8.1.

34.     ClearOne faces irreparable harm if the Spontania intellectual property were to be disclosed or used by others, in particular actual or potential competitors for the Spontania products and products developed from and based upon Spontania.

## GARCIA'S AND MARTIN-BALLESTRO'S EMPLOYMENT WITH CLEARONE

35.     As noted, the Spontania Assets acquired by ClearOne included Dialcom's Spontania line of business, which in turn included ClearOne's acquisition of certain Dialcom employees to continue to develop Spontania-related technology and continue the development and commercialization of the Spontania products.

36.     On or about January 19, 2014, both Garcia and Martin-Ballestro travelled to ClearOne in Salt Lake City, Utah, in relation to the acquisition and their employment with ClearOne.

37.     On or about March 26, 2014, Garcia met with ClearOne again in Salt Lake City regarding the acquisition, as well as his and Martin-Ballestro's employment with ClearOne.

38.     On or about March 31, 2014, Garcia and Martin-Ballestro were hired as consultants for ClearOne, and both executed identical consulting agreements

(hereafter, sometimes "Consulting Agreement(s)") with ClearOne that were to be substantially performed in Salt Lake City, Utah, among other places.

39.     In the Consulting Agreements, which identified ClearOne as "the Company," both Garcia and Martin-Ballestro promised that, "[e]xcept with express written authorization of the Company, Consultant will not perform any work other than that which is the object of this Agreement, or provide services to any other business other than the Company, either directly or through an intermediary or any third party." Consulting Agreement, § 11.

40.     While Garcia and Martin-Ballestro were allowed to continue to be shareholders and administrators of Dialcom, they could do so only if it did not affect their commitments and obligations to ClearOne.  *Id.*

41.     Further, while Garcia and Martin-Ballestro were also allowed, for a limited period of time, to continue rendering services to Dialcom in relation to Orion, such services were strictly limited to assisting in the sale of Orion as it then-existed, and expressly prohibited Garcia and Martin-Ballestro from "any activities related to the software development or commercial exploitation" of Orion.  *Id.*

42.     Garcia and Martin-Ballestro expressly acknowledged in the Consulting Agreements that they would each have access to, and also create as part of the services provided, ClearOne confidential, trade secret, and proprietary information (collectively, the "Confidential Information"), and agreed not to use and/or disclose ClearOne's Confidential Information without the written consent of ClearOne. Consulting Agreement, § 6.1.

43.     Garcia and Martin-Ballestro agreed that they would only use equipment provided by ClearOne to store, communicate, and use ClearOne's Confidential Information.  *Id.*

44.     Upon termination of their employment with ClearOne, Garcia and Martin-Ballestro agreed that they would deliver all Confidential Information to ClearOne, in addition to any other materials created by them in connection with the services provided.  Id. § 10.4.

45.     The Confidential Information described in the Consulting Agreements included the Spontania source code.

46.     The Spontania source was also subject to other reasonable efforts by ClearOne to maintain its secrecy, including but not limited to restricting access to the source code and requiring non-disclosure agreements from all employees having access to the source code.

47.     Over the course of their employment with ClearOne, both Garcia and Martin-Ballestro sent numerous e-mails and made regular telephone and video calls to ClearOne executives and employees located in Salt Lake City, Utah, including weekly "one-on-one" meetings with ClearOne executives.

48.     Pursuant to their agreements with ClearOne, Garcia and Martin-Ballestro had significant business and operations oversight for ClearOne's Spontania business after the acquisition, and therefore were placed in a special relationship of trust and confidence - trust that, as ClearOne subsequently discovered, was used to effectuate their illicit and wrongful conduct.

9

**THE DISCOVERY OF DEFENDANTS' MISCONDUCT AND FRAUD**

49.     On or about October 8, 2014, ClearOne commenced an annual audit of its computer hardware, software, and other business assets at the Spontania office in Spain.

50.     As part of the audit process, ClearOne intended to make a back-up copy of a ClearOne computer server located at the Spontania office, which server contained all purchased products, source codes, and assets, as well as all post-acquisition development of the Spontania intellectual property by the employees and consultants in the office.  In other words, and among other things, the ClearOne server contained all the Spontania code and related technology, past and present.

51.     When Martin-Ballestro discovered that the server was going to be backed-up for the audit, he proceeded to delete without ClearOne's consent approximately 659 GB of data from the server, including folders containing confidential and trade secret information belonging to ClearOne.

52.     When Martin-Ballestro's actions were discovered, ClearOne asked for an explanation, and was shocked when he admitted that at the same as ClearOne was attempting its backup of the ClearOne server, he had copied ClearOne server files to his own device, and then deleted the files from the ClearOne server.

53.     On or about October 14, 2014, ClearOne terminated Martin-Ballestro.

54.     On or about October 20, 2014, ClearOne terminated Garcia.

55.     ClearOne subsequently learned that, prior to being terminated, Martin-Ballestro deleted and wiped clean the contents of the laptop provided to him by

ClearOne for the continued development of Spontania, even though such work was the property of ClearOne.

56.     Prior to their termination, Garcia and Martin-Ballestro were the primary points of contact for ClearOne for the Spontania operations.

57.     After Garcia and Martin-Ballestro were terminated, and in the course of ClearOne's investigation into the actions of Garcia and Martin-Ballestro, three employees, reported to ClearOne that – contrary to the Source Code Representations – the Orion source code was not independently developed from the Spontania source code and that the Orion source code was the same as the Spontania source code in all material respects.

58.     ClearOne further learned during its investigation that prior to and after the acquisition, Garcia and Martin-Ballestro had instructed the Spontania employees that they were prohibited from communicating to ClearOne about the Orion products, including about the Orion source code.

59.     As a result of these events, ClearOne hired a computer forensic expert company (the "ClearOne Computer Expert") to retrieve and analyze the information deleted by Martin-Ballestro from the ClearOne server and his ClearOne-issued laptop computer, as well as to compare the Orion source code, which ClearOne believed to be included in the information deleted, with the Spontania source code.

60.     The ClearOne Computer Expert recovered, among other deleted files, the Orion source code.

61.     The ClearOne Computer Expert discovered and confirmed the following:

(a)     that the digital information deleted by Martin-Ballestro in October 2014 included the Orion source code, Spontania source code, and other ClearOne files;

(b)     that the Orion source code was identical to the Spontania source code in all material respects;

(c)     that prior to and through the October 2014 termination dates, the individual Defendants had been using ClearOne's Spontania server to offer Orion-related services to a ClearOne, Spontania customer (the "Attempted Orion Sale").

62.     Subsequently, in a criminal court proceeding in Spain, a second computer forensic expert appointed by the court from the Association of Engineers in Computer Science from Aragon, Spain (the "Second Computer Expert), compared the entire Orion and Spontania source codes.

63.     The Second Computer Expert confirmed that the Orion source code was 90.82% reused or copied the Spontania source code, and that the Orion source code contains files with names that include the word "Spontania," as well as lines of source code including the word "Spontania," establishing that the Spontania source code was extensively reused by Defendants in the Orion source code

## COPYRIGHT INFRINGEMENT

64.     The Register of Copyrights issued copyright registrations to ClearOne for the Spontania source code acquired from Dialcom, in TXu 2-001-617, TXu 2-001-622, and TXu 2-001-623 (collectively, the "US Copyrighted Code").  These registrations are

effective as of July 20, 2016.  Copies of the Certificates of Registration are attached as Exhibit A.

65.     ClearOne is the sole owner of all right, title, and interest in the copyrights for the US Copyrighted Code.  ClearOne has at all times protected the Spontania source code, including the US Copyrighted Code, for its own exclusive use and profit.

66.     None of the Defendants have permission to use any of ClearOne's copyrighted materials for any purpose, including the US Copyrighted Code.

67.     Defendants' use of ClearOne's US Copyrighted Code, as part of any Orion product or otherwise, constitutes infringement.

68.     Defendants wrongfully used the US Copyrighted Code in the 2014 Attempted Orion Sale, discovered by the ClearOne Computer Expert.

69.     Upon information and belief, and including because Defendants still wrongfully possess the Spontania source code and the US Copyrighted Code, Defendants have continued and are continuing to infringe ClearOne's copyrighted source code, including by offering and providing Orion products and services to end customers and others.

**FIRST CLAIM FOR RELIEF**
**(Copyright Infringement)**
**(Against Defendants)**

70.     ClearOne incorporates the preceding paragraphs by reference.

71.     ClearOne is and at all material times was the sole owner of all rights, title, and interest in and to the copyrights in the US Copyrighted Code.  ClearOne has complied in all respects with the Copyright Act, and has secured exclusive rights and

privileges in and to the copyrights in and to the US Copyrighted Code.  ClearOne had

obtained from the Register of Copyrights certificates of registration for the copyrights in

the US Copyrighted Code.

72.     The US Copyrighted Code is wholly original and is copyrightable subject

matter under the Copyright Act.

73.     Without ClearOne's authorization or consent, Defendants have copied,

reproduced, used, offered for sale, sold, attempted to license, and licensed the US

Copyrighted Code, thereby misappropriating ClearOne's original work and violating

ClearOne's rights as the exclusive owner thereof.

74.     By making unauthorized copies and reproductions of the US Copyrighted

Code, and by their unauthorized use and licensing of the US Copyrighted Code,

Defendants have willfully infringed, and continue to willfully infringe, ClearOne's

exclusive rights under the Copyright Act.

75.     In the alternative, because a Defendant profited directly from the

infringement of ClearOne's copyrights by one of more of the other Defendants, and had

a right and ability to supervise the activities of one or more of the other Defendants, and

had knowledge of, contributed to, and failed to prevent the infringement of ClearOne's

copyrights by one or more of the other Defendants, that Defendant is liable under a

theory of vicarious copyright infringement.

76.     In the alternative, because a Defendant materially contributed to, caused,

and/or intentionally induced the infringement of ClearOne's copyrights by one or more of

the other Defendants, that Defendant is liable under a theory of contributory copyright infringement.

77.     Pursuant to 17 U.S.C. § 504(b), ClearOne is entitled to recover from Defendants, jointly and severally, all actual damages sustained by ClearOne and any and all profits gained by Defendants as a result of their infringements.

78.     In the alternative, and pursuant to 17 U.S.C. § 504(c), upon election prior to final judgment, ClearOne is entitled to recover from Defendants, jointly and severally, statutory damages in an amount not less than $750 or more than $30,000 for each act of infringement.

79.     Defendants willfully infringed ClearOne's copyrights.

80.     As such, if ClearOne elects to recover statutory damages prior to final judgment, ClearOne is entitled to statutory damaged of up to $150,000 for each act of willful infringement.

81.     Pursuant to 17 U.S.C. § 502, ClearOne is entitled to preliminary and permanent injunctive relief against Defendants, and all persons acting in concert with each of them, enjoining them from continuing to infringe or committing additional infringements of its copyrighted material.

82.     Pursuant to 17 U.S.C. § 505, ClearOne is entitled to an award of its full costs and reasonable attorney fees.

**SECOND CLAIM FOR RELIEF**
**(Fraudulent Misrepresentation)**
**(Against Defendants)**

83.     ClearOne incorporates the preceding paragraphs by reference.

84.     Defendants made representations to ClearOne which include, but are not limited to, the Source Code Representations.

85.     Defendants' representations were material; false at the time they were made or made recklessly, knowing that there was insufficient knowledge upon which to base such representations; and for the purpose of inducing ClearOne to act.

86.     ClearOne, acting in reasonable reliance upon Defendants' fraudulent representations and in ignorance of their falsity, did in fact rely upon these false representations to ClearOne's detriment, including as alleged above.

87.     As a direct and proximate result of Defendants' fraudulent misrepresentations, ClearOne has been damaged and is therefore entitled to a judgment for damages against Defendants, jointly and severally, in an amount to be determined at trial, but not less than $5 million.

88.     Defendants' conduct was willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of ClearOne, entitling ClearOne to an award of punitive damages against Defendants, jointly and severally, under UTAH CODE § 78B-8-201.

### THIRD CLAIM FOR RELIEF
### (Fraudulent Non-Disclosure)
### (Against Defendants)

89.     ClearOne incorporates the preceding paragraphs by reference.

90.     Defendants owed a duty to ClearOne to communicate and disclose to ClearOne material facts, including, but not limited to, the falsity of the Source Code Representations; that the Spontania source code was not unique and separate from the

Orion intellectual property; including that the Orion product did share the same source code as Spontania; that the Orion source code was not independently developed from Spontania; and that the Orion source code was identical in all material respects to the Spontania source code.

91.     Defendants intentionally did not disclose to, and concealed from, ClearOne the described material information.

92.     Defendants had knowledge of the material information and had the opportunity to disclose it to ClearOne.  Had the information been disclosed to ClearOne, it would have materially impacted ClearOne's relationship with and decisions regarding Defendants, including ClearOne's handling of the acquisition of the Spontania Assets and actions by ClearOne to insure that Defendants did not retain any of the Spontania source code or other intellectual property purchased by ClearOne.

93.     As a direct result of Defendants' fraudulent concealment and omissions, ClearOne has been damaged and is therefore entitled to a judgment for damages against Defendants, jointly and severally, in an amount to be determined at trial, but not less than $5 million.

94.     Defendants' conduct was willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, the rights of ClearOne, entitling ClearOne to an award of punitive damages against Defendants, jointly and severally, under UTAH CODE § 78B-8-201.

**FOURTH CLAIM FOR RELIEF**
**(Estoppel)**
**(Against Defendants)**

95.    ClearOne incorporates the preceding paragraphs by reference.

96.    ClearOne acted with prudence and in reasonable reliance on Defendants'

Source Code Representations.

97.    Defendants knew that ClearOne had relied on the Source Code

Representations, which Defendants should reasonably have expected to induce action

or forbearance on the part of ClearOne.

98.    Defendants were or should have been aware of all material facts related to

the nature of the Orion source code in respect to the Spontania source code.

99.    ClearOne in fact relied on Defendants' Source Code Representations, and

that reliance resulted in a loss to ClearOne in an amount to be proven at trial, but not

less than $5 million.

**FIFTH CLAIM FOR RELIEF**
**(Misappropriation and Threatened Future Misappropriation of Trade Secrets)**
**(Against Defendants)**

100.    ClearOne incorporates the preceding paragraphs by reference.

101.    ClearOne's trade secrets, including without limitation the Spontania source

code and other Confidential Information taken by Defendants in October 2014, were

and/or are trade secrets, in that they derive and/or derived independent economic

value, actual or potential, from not being generally known to, and not being readily

ascertainable by proper means by, other persons who can obtain economic value from

their disclosure or use.

102.    ClearOne's trade secrets have been and/or are the subject of efforts by ClearOne that were and/or are reasonable under the circumstances to maintain their secrecy.

103.    Defendants acquired ClearOne's trade secrets by improper means, including but not limited to theft, misrepresentation, and/or breach or inducement of a breach of a duty to maintain secrecy.

104.    Defendants misappropriated and/or threaten to misappropriate ClearOne's trade secrets by, among other things, acquiring the trade secrets with knowledge that such acquisition was by improper means; and/or by disclosing or using the trade secrets without express or implied consent, when Defendants used improper means to acquire knowledge of the trade secrets; or at the time of disclosure or use, knew or had reason to know that knowledge of the trade secrets was derived from or through a person who had utilized improper means to acquire them, acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use, or derived from or through a person who owed a duty to ClearOne to maintain their secrecy or limit their use; or before a material change of their position, knew or had reason to know that the information was a trade secret and that knowledge of it had been acquired by accident or mistake.

105.    Defendants used ClearOne's trade secrets by operating a system to provide the services offered by Orion to an end customer through ClearOne's Spontania server until October 2014, among other things.

106.    Upon information and belief, Defendants have continued to use ClearOne's trade secrets, or at the very least, Defendants' continued possession of

Spontania source code, including as incorporated in Orion, threatens the continued use of ClearOne's trade secrets by Defendants without ClearOne's consent.

107.   As a direct and proximate result of the misappropriation and/or threatened misappropriation of ClearOne's trade secrets by Defendants, ClearOne is entitled to recover an amount to be determined at trial, including damages for the actual loss caused by the misappropriation, and the unjust enrichment to Defendants by the misappropriation that is not taken into account in computing actual loss, in an amount to be determined at trial, but not less than $5 million; or, in lieu of these damages, by imposition of liability for a reasonable royalty for the unauthorized disclosure or use of ClearOne's trade secrets pursuant to UTAH CODE § 13-24-4(1).

108.   ClearOne is also entitled to an injunction enjoining Defendants' actual and/or threatened misappropriation; or in the alternative, an injunction conditioning future use upon payment of a reasonable royalty, should exceptional circumstances exist; in addition to any mandatory injunction appropriate to protect ClearOne's trade secrets, pursuant to UTAH CODE § 13-24-3.

109.   Defendants' acts were willful and malicious, and as a result ClearOne is entitled to an award of exemplary damages pursuant to UTAH CODE § 13-24-4(2) in an amount of twice any award for misappropriation of ClearOne's trade secrets pursuant to UTAH CODE § 13-24-4(1), as well as reasonable attorneys' fees pursuant to UTAH CODE § 13-24-5.

**SIXTH CLAIM FOR RELIEF**
**(Breach of Contract – The Consulting Agreements)**
**(Against Garcia and Martin-Ballestro)**

110.   ClearOne incorporates the preceding paragraphs by reference.

111.   The Consulting Agreements are binding and enforceable contracts between ClearOne and Garcia and Martin-Ballestro, respectively.

112.   ClearOne has performed all conditions and obligations of the Consulting Agreements.

113.   Garcia and Martin-Ballestro have materially breached the Consulting Agreements by the acquisition, disclosure, and/or use of ClearOne's confidential and/or trade secret information; and violations of the provisions restricting their development and commercialization of Orion.

114.   As a direct and proximate result of Garcia's and Martin-Ballestro's material breaches of the Consulting Agreements, ClearOne has been damaged in an amount to be determined at trial, but not less than $5 million.

**SEVENTH CLAIM FOR RELIEF**
**(Breach of the Covenant of Good Faith and Fair Dealing –**
**The Consulting Agreements)**
**(Against Garcia and Martin-Ballestro)**

115.   ClearOne incorporates the preceding paragraphs by reference.

116.   The Consulting Agreements are binding and enforceable contracts between ClearOne and Garcia and Martin-Ballestro, respectively.

117.   ClearOne has performed all conditions and obligations of the Consulting Agreements.

118.   Garcia and Martin-Ballestro were obligated not to destroy or injure ClearOne's right to receive the fruits of the Consulting Agreements.

119.   Garcia's and Martin-Ballestro's conduct, including without limitation their acquisition, disclosure, and/or use of ClearOne's confidential and/or trade secret information, as well as violations of the provisions restricting their development and commercialization of Orion, is inconsistent with the agreed common purpose of the Consulting Agreements, and ClearOne's justified expectations.

120.   Garcia's and Martin-Ballestro's actions constitute material breaches of their obligations of good faith and fair dealing to ClearOne under the Consulting Agreements.

121.   As a direct and proximate result of Garcia's and Martin-Ballestro's breaches of the covenant of good faith and fair dealing, ClearOne has been damaged in an amount to be determined at trial, but not less than $5 million.

### EIGHTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)
### (Against Garcia and Martin-Ballestro)

122.   ClearOne incorporates the preceding paragraphs by reference.

123.   Including because Garcia and Martin-Ballestro had significant business and operations oversight for ClearOne's Spontania business, they were in a special relationship of trust and confidence with ClearOne, and owed an existing and continuing duty to ClearOne to act with the utmost good faith and in the best interests of ClearOne.

124.   The duties owed by Garcia and Martin-Ballestro included, among other things, the duty to preserve the property and confidential and/or trade secret information

of the ClearOne, the duty not to disclose ClearOne's confidential and/or trade secret information outside of ClearOne's business, and the duty not to use ClearOne's confidential and/or trade secret information for personal profit or benefit.

125.    Garcia and Martin-Ballestro breached their duties to ClearOne and knowingly acted against ClearOne's best interests, including for their own personal profit or benefit.

126.    As a direct and proximate result of Garcia's and Martin-Ballestro's breaches of duty, ClearOne has been damaged in an amount to be proven at trial, but not less than $5 million, including interest, costs, and attorneys' fees as allowed by law.

127.    Garcia's and Martin-Ballestro's conduct was and is willful or malicious, or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and disregard of, ClearOne's rights; thus, ClearOne is entitled to an award of punitive damages against Garcia and Martin-Ballestro, jointly and severally, under UTAH CODE § 78B-8-201.

### NINTH CLAIM FOR RELIEF
### (Unjust Enrichment)
### (Against Defendants)

128.    ClearOne incorporates the preceding paragraphs by reference.

129.    ClearOne has, albeit unknowingly, conferred a benefit on Defendants.

130.    Defendants accepted the benefits of ClearOne's efforts, albeit without informing ClearOne, and did so under circumstances whereby it would be inequitable for Defendants to retain the benefits without paying the value thereof.

131.   ClearOne is therefore entitled to payment from Defendants for the value of the benefit conferred upon Defendants, in an amount to be determined at trial, but not less than $5 million.

## TENTH CLAIM FOR RELIEF
### (Alter Ego)
### (Against Defendants)

132.   ClearOne incorporates the preceding paragraphs by reference.

133.   Dialcom is, in fact, the alter ego of Garcia and Martin-Ballestro.

134.   Among other things, Garcia and Martin-Ballestro have not observed corporate formalities, and treated monies belonging to Dialcom as their own.

135.   The observance of the corporate or legal entity would sanction fraud, promote injustice, or produce an inequitable result.  As such, ClearOne is entitled to pierce the veil of this legal entity, and hold all of Defendants jointly and severally liable.

## ELEVENTH CLAIM FOR RELIEF
### (Injunction)
### (Against Defendants)

136.   ClearOne incorporates the preceding paragraphs by reference.

137.   Defendants have violated ClearOne's rights and have otherwise acted in an unlawful manner, as set forth in the preceding Claims for Relief.

138.   ClearOne has a substantial likelihood of prevailing on the merits of its claims, or there are serious issues on the merits which should be the subject of further litigation.

139.   An order and injunction enjoining Defendants from continuing their wrongful conduct will not be adverse to the public interest.

140.    The threatened injury to ClearOne from Defendants' continued wrongful conduct outweighs any damage an injunction could cause Defendants.

141.    Therefore, under Rule 65A of the Utah Rules of Civil Procedure, Plaintiff is entitled to an injunction which includes an order as follows:

a.    That Defendants immediately cease use of, and be prohibited from any future use of, any of ClearOne's property, including but not limited to ClearOne's confidential and/or trade secret information, including as embodied in the Spontania and Orion source codes.

b.    That Defendants immediately deliver to counsel for ClearOne all written or electronic materials generated or derived from the use of ClearOne's property, including but not limited to ClearOne's confidential and/or trade secret information, and including without limitation any tapes, hard drives, zip drives, memoranda, notes, notebooks, e-mail, or other document or data storage source referring to, referencing, including, or using such information.

c.    That all products incorporating or including, or developed through the disclosure or use of, ClearOne's property, including but not limited to ClearOne's confidential and/or trade secret information, be impounded or destroyed, or otherwise subject to some reasonable disposition that will ensure that return of return or destruction of all such information belonging to ClearOne and in the possession of any Defendant.

142.    Any additional relief warranted at law or necessary to protect ClearOne's

rights, to be determined by the facts and circumstances at the time of entry of the order.

## RELIEF SOUGHT

Wherefore, ClearOne prays for judgment against Defendants as follows:

I.      On each Cause of Action, for the relief as requested.

II.     Interest, costs, and other relief as allowed by law.

III.    For such other and further relief as the Court deems just and equitable

under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, ClearOne demands a trial by jury

on all issues so triable.

DATED this 19th day of September, 2016.

MAGLEBY CATAXINOS & GREENWOOD

James E. Magleby
Jennifer Fraser Parrish

Attorneys for Plaintiff ClearOne, Inc.